**CITY OF ATHENS et al. v. ANDREWS.**

No. 14229.

Court of Civil Appeals of Texas. Dallas.

June 9, 1950.

Rehearing Denied July 14, 1950.

Justice, Moore & Justice, Athens, for appellants.

J. S. Simkins, Corsicana, and Sam Holland, Athens, for appellee.

BOND, Chief Justice.

M. C. Andrews, appellee herein, as plaintiff, instituted this suit in a District Court of Henderson County against L. B. Thornton and wife Athlee Thornton, Wm. A. Stegall, County of Henderson and members of the Commissioners' Court of said County, and City of Athens, Texas and its Commissioners, in trespass to try title to a narrow strip of land between the south line of a road reservation designated in the record as "Old Highway 31" or "Athens-Malakoff Road" and the north line of New State Highway 31; and for one-half—30 feet wide—of the Old Highway running east and west with the above narrow strip.

The trial was to a jury, over objections of defendants; and, on its findings which we think are uncontroverted, there exists a narrow strip, 3.6 feet wide at the west end and 7.5 feet wide at the east end, approximately 160 feet long, located north of and adjacent to the north line of the New State Highway 31. The trial court, over defendants' exception and motion for judgment urged at the conclusion of the evidence and motion non obstante veredicto (both overruled), entered judgment for the plaintiff to all right, title and possession of the aforesaid narrow strip of land; and all right, title and interest in that portion of the old Athens-Malakoff Road lying south of the center line thereof (30 feet) which abuts on the north side of the narrow strip, approximately 160 feet in length; subject, however, "to the right of abutting property owners to the North and the public in general to use said portion of said roadway as a passageway, so long as they elect to do so." The County of Henderson and City of Athens appealed.

In 1899 a 28-acre tract of land out of the Thos. Parmer Survey in Henderson County, of which the land in controversy is a part, was deeded to J. I. Richardson; and the record here shows that Mr. Richardson subdivided the land into small tracts of one, one and a half, and two acres, each tract abutting on the north and south lines of the old Athens-Malakoff Road; and it is agreed by the parties hereto that Mr. Richardson is the common source of title to the tracts of land in controversy. A substantial reproduction of the map relating to the land in controversy is here inserted.

-2-

V. E. WEST

KILLINGSWORTH

WM. A. STEGALL

170'
89 vrs. — 80' — 3.6'

M. C. ANDREWS
(BEN GREEN)
-3-

60'

63 vrs. — (176')

BURRELL THORNTON

NEW HIGHWAY 31

OLD HIGHWAY-31

89 vrs. (247.2') — 80' — 7½'

COY ELLEDGE
(J. W. BASS)
(M. STIRMAN)
-4-

WARD & BRUNS (STACY)

Call 89 v. — 264.2'

Call 89 v. — 247.2'

25'

ISADORE ST.

McCALEB. -5-
D. B. POOL
(HENRY HART)
-6-

N
W — E
S

From the record and map, as filed, the property owners to the north, including defendants Thornton and Stegall, owned land abutting the Old Highway. The City of Athens maintains water-mains and other utilities over and under the surface, and the property owners as well as the public generally use the road. In 1908 J. L. Ruff conveyed to Ben Greer (appellee's immedate grantor) about one acre of land described as follows: "Beginning at the N.W. corner of Millard Stirman (Coy Elledge on map) 1½ acre lot. Thence South 89 vrs. to S.W. corner of said Stirman lot. Thence West 63.4 vrs. to stake for corner. Thence North 89 vrs. Thence East 63.4 vrs. to the beginning." In 1929 Ben Greer and wife conveyed to the County of Henderson, by deed, a strip across the land for the location of the contemplated New State Highway 31. This deed describes the land as follows: "Beginning at a stake set for corner of the Greer East line, being also the Bass West line, said stake Engineer's Station No. 36/23 on the center line of *Proposed* Highway No. 31 West. Thence North 40 feet to a point for corner at the Northeast corner of the right of way herein described. Thence N 89 deg. 27′ West along the North line of the right of way, a distance of 160 feet to a point for corner at the Northwest corner of the right of way. Thence South along Greer's *East* (West) *Line,* same being Greer's *West line,* passing Engineer's Station No. 37/83 at 40 feet and on a total distance of 80 feet to a point for corner at the Southwest corner of the right of way. Then South 89 deg. 27′ E along the South line of the right of way, a distance of 160 feet to a point for corner at the Southeast corner of the right of way. Thence North a distance of 40 feet to the point of beginning, containing by the above description 0.29 acres more or less. The above describes an 80⋅ foot right of way, of which *70 feet lies on the B. J. (Ben) Greer tract of land and 10 feet lies in the present roadway (Old Highway 31)* of Highway No. 31 West." (Italics supplied.) It will be observed here that the northwest corner of the New Highway corners at Greer's west line near the south line of the Old Highway, and the northeast corner at Greer's east line, near south line of the right of way.

In 1930, subsequent to above deed to Henderson County and after the New State Highway had been constructed, Ben Greer and wife conveyed to M. C. Andrews, appellee herein, all of the remaining portion of the land (Lot 3 on the map) which had not been theretofore conveyed to the County. The deed gives specific description of the land by metes and bounds, as in the Greer-Ruff deed first above recited, and then concludes: "Save and Except: *70 feet deeded by us* for right of way purposes through the above described tract of land and being all of the land described in a deed from J. L. Ruff to Ben Greer, dated 11th day of January 1908. A portion of which is *now located* on the north side and a portion of which is *now located* on the south side of the New Highway." (Italics supplied.)

While the suit is one in trespass to try title, its resolute purpose is for interpretation of the deed from Greer and wife to Henderson County and the location of the narrow strip of land within its terms. Manifestly, the specific field notes, course and distance, are insufficient to definitely locate the proposed new Highway 31, in absence of the general recital in the deed that 70 feet of the 80-foot right of way "lies on" grantor's land and "10 feet lies in the old roadway." The deed is not ambiguous; the particular description (metes and bounds) is not inconsistent with the general description. It is in evidence, and conceded, that the New Highway was not constructed at date of the deed to the county; and was definitely established and laid out on the grounds at date of the above deed to appellee. Thus we have to turn to the general description recited in the deed in definitely locating the right of way, irrespective of any subsequent placement of the Highway as is shown on the map in aid of the specific description of location for the right of way.

In the case of Gulf Production Co. v. Spears, 125 Tex. 530, 84 S.W.2d 452, 455, where a lease conveyance, immediately after the particular description of the land involved, provided in general terms that

it was the intention to include all land owned and claimed by lessor in said survey, Judge Smedley, Commissioner, in opinion adopted by the Supreme Court, said: "The description by metes and bounds in the lease * * * is both incomplete and incorrect. * * * the land leased is gathered from the entire instrument, and effect is given to the positively stated declaration of the lessor's intention. *ᐟ * * a general description must be called to aid a doubtful or defective particular description."

In Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, 916, the grantor's deed conveyed a 30-foot strip of land abutting on the street or public highway. The description used did not mention a strip between the land conveyed and the public road, and the description did not show the intention to reserve the strip. The Supreme Court quoted with approval 9 Corpus Juris, p. 203, sec. 97; 11 C.J.S., Boundaries, § 35, where it is said: " 'Where a highway is laid off entirely on the owner's land, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee.' For a discussion of the foregoing rule, see the following authorities: Snoddy v. Bolen, 122 Mo. 479, 24 S.W. 142, 25 S.W. 932, 933, 24 L.R.A. 507; Johnson v. Arnold, 91 Ga. 659, 18 S.E. 370; Taylor v. Armstrong, 24 Ark. 102, 107; Haberman v. Baker, 128 N.Y. 253, 28 N.E. 370, 13 L.R.A. 611; In re Robbins, 34 Minn. 99, 24 N.W. 356, 57 Am.Rep. 40; Cuneo v. Champlin Ref. Co., 178 Okl. 198, 62 P.2d 82; Paine v. Consumers', etc., Co., 6 Cir., 71 F. 626. See also 11 C.J.S., Boundaries, § 35, pp. 580, 581, 582." The Court then said: "In view of the public policy of this State with reference to such strips of land, and the presumption that it was the intention of grantors to convey such narrow strip to the grantees with the other land adjoining same, we do not think that affects the rule, so far as the title to the strip is concerned, if the road was never used or if it was abandoned. Amerman v. Missouri, K. & T. R. Co., Tex.Civ.App., 182 S.W. 54."

In Holman v. Houston Oil Co. of Texas, 152 S.W. 885, Syl. 2 (writ dismissed), the Galveston Court of Civil Appeals held: "Where there is a repugnance between a general and a particular description, the latter will control; but, whenever possible, the real intention is to be gathered from the whole description, including both the general and the special."

In Pierce Estates v. Howard, Tex. Civ.App., 100 S.W.2d 749 (writ dismissed), there was no choice between the particular and the general description, the land conveyed was by metes and bounds, definitely located, the general description embracing all the land to a bayou and river. The Court held (Syls. 2 and 3): "As respects construction of deeds, intention of parties is to be ascertained, and, if not forbidden by law, given effect, and that construction which is most consistent with intention of grantor, as gathered from terms of conveyance, is to be accepted as controlling As respects construction of deeds, where there is a repugnancy between particular and general description, and the general description refers to the same land, the particular description will control." The rule is definitely stated in 7 Tex. Jur., p. 140, sec. 22, that "The boundaries of a tract of land are established by reference to the calls in the grant or the field-notes carried into the grant. If the land can be definitely located from such calls and there is no ambiguity or uncertainty in them, it must be so located as a matter of law, neither the court nor the jury in such case being at liberty to disregard the calls." But it will be seen from the text that this rule has no application where the calls for course and distance do not definitely locate the land, as here, or where there is an ambiguity or uncertainty in the calls or field-notes, as against the general description which does definitely locate the land intended to be conveyed by the parties.

So, in the instant case the deed to the County correctly grants a right of way 80 feet in width,—40 feet from the center to either side, and 160 feet long. The begining corner is reckoned somewhere from

"a stake set for *corner of the Greer East line,* being also the Bass West line," as being the center of the right of way. (Italics supplied.) The common corner of the Greer east line and the Bass west line is on the south line of the Old Highway; hence the south line is the center of the highway; the north line extending over into the old highway, and the south line across the north portion of Greer's land,— now Andrews' land. The general description following the particular description shows clearly the intention of the parties that the right of way for the *contemplated* Highway 31 should extend and include only 10 feet into the Old Highway and *70 feet* across the grantor's land. In this respect, we find a corresponding conclusion in the above deed from Greer and wife to Mr. Andrews, the appellee. In describing the land by metes and bounds, the grantors expressly excepted therefrom (we repeat): "Save and Except: 70 feet deeded by us for right of way purposes through the above described tract of land *. * *. A portion of which is *now* located on the north and a portion of which is *now* located on the south side of the New Highway." This conclusion is further supported by the testimony of appellee's witness Ben H. Wathen, county surveyor, to the effect that the New Highway as *now constituted* (designated on the map, is not located on the right of way as recited in the deed. Wathen testified:

"Q. I will ask you, if you heretofore, if you didn't go out to the highway markers, and try to locate it as laid out by the highway, didn't you draw a proposed sketch of it? A. I think I did.

"Q. * * * You know that this highway is not laid as the sketch is laid, don't you? A. The old highway?

"Q. I mean the one they proposed to lay out there, it was not laid as the right of way deed will show? A. I think that is so. * * *

"Q. You know now from your observation that the highway was not located as called for in the right of way deed? A. I suspect it, I don't think anybody living could know. * * *."

(Re-Direct by appellee): "Q. Mr. Wathen, in making your plat here, did you undertake to lay out this present new highway, as it is laid out on the ground, locate these lines with reference to the lines and corners of the other tracts of land and the field notes given in the right of way? A. No, I couldn't take the field notes and put them together, I ignored them, I located the lands and put the highway on it like it was on the North."

In the same connection, we have the testimony of appellee's witness W. C. McGuffey who testified on direct examination by appellee:

"Q. Do you recall an old road that existed out there, prior to the time that the new road was laid off, that we called the Athens-Malakoff Road? A. Yes sir, I know where it was.

"Q. Where did it lie with reference to where the new highway is now located? A. It lay north of it.

"Q. Prior to the time they constructed the new highway, was the old highway used for travel or not, in going from Athens and going back that way to Malakoff and coming to Athens? A. Yes sir.

"Q. Has it been used for such traveling public since the construction and completion of the new highway? A. I wouldn't think so. * * *

"Q. Now Mr. McGuffey, do you have in mind the location of the underpass on the Corsicana Street? A. Yes sir.

"Q. Do you know whether or not there was any difficulty encountered by the County in laying this road there, with reference to getting under the railroad, and the right of way procured on out West? * * * A. Yes.

"Q. As a result of that, do you know whether or not they shifted the location of the highway? A. They did.

"Q. Do you know in what direction they shifted it? A. They shifted it back south, I don't know how far.

"Q. Was that after the right of way deed had been procured? A. Yes."

We think the record evidence definitely shows that the right of way deed

here involved extends the grant north to include all land between the north line of the New Highway as it is now laid out and the Old Highway; and that the evidence is uncontroverted that the New Highway, when constructed, was shifted south of the Old Highway, thus leaving title to the narrow strip involved in this suit to vest in Henderson County. Appellee offered in evidence deeds involving the right of way to the east, a prolongation of that portion of the highway here involved. These deeds were executed by various parties, landowners not connected with appellee's title to the land involved, some were executed subsequent to the deed to Henderson County. Therefore we are of the opinion that such deeds could have no probative value as to aid construction of the deed from Greer to Henderson County, or in ascertaining the intention of the parties thereto as to the location of the right of way across Grantor Greer's land.

■ A rule of construction applicable to deeds as well as to other written instruments is tersely stated in the opinion, Texas N. O. R. Co. v. Orange County, Tex.Civ. App., 206 S.W. 539, 544, error refused: "Where the parties to an instrument in writing have by their acts and conduct placed a construction upon the same, showing the intention of the parties executing the same, then such acts and conduct should be given strong weight by the courts in arriving at the intention of the parties in the execution of the instrument, and, in absence of clear language in such instrument indicating an intention to the contrary of the parties as expressed by their acts and conduct, the courts should adopt the construction of such instrument as placed upon it by the parties thereto."

■ In the deed from Ben Greer and wife to Mr. Andrews, supra, executed in consonance with the new and old highways as they then existed, the grantors included within its terms all of the land within bounds of the one-acre tract of land that they had purchased from Mr. Ruff,— save and except 70 feet of the 80-foot right of way theretofore conveyed to Henderson County; relating in such deed that a portion thereof was on the north and a portion on the south of the highway. Giving the term a construction in harmony with the situation as it then existed, the New Highway was definitely located, then shifted south from the right of way grant, leaving the narrow strip here involved. The unused strip, a part of the right of way, was intended to be included in the deed to Mr. Andrews which carried with it abutter's right, title and interest in and to the old highway claimed to have been abandoned; therefore sought to vest in the grantee such interest to the center of the road. It will be observed that the portion north of the highway was not designated as being north of the right of way. Mr. Greer had previously divested himself of all interest in the strip of land, hence the deed to appellee did not convey any land north of the New Highway; and, in consequence, appellee has no right, title or interest in the old highway as an abutter.

As we view this record, there was no controversial fact to be determined by the jury; and the interpretation of the deed expressive of the intent of the parties presents a question of law against appellee and the judgment of the trial court. Therefore the judgment is reversed and here rendered that plaintiff recover nothing by his suit.

Reversed and rendered.